WILLIAM T. BAGLEY, administrator, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

CHARLES BAGLEY *vs.* SAME.

Hampden.   September 24, 1895. — January 4, 1896.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Public Way by Prescription — Evidence
— Exceptions.*

W. Street in a city ran east and west to a river, and a railroad ran north and south.
The railroad location was filed in 1845, and W. Street across the location ap-
peared on it. The right to construct the railroad over the land was conveyed by
W. and another to the corporation, by a deed dated more than three months after
the location was filed, containing the following : " Reserving, however, the right
to the use of W. Street as a street two rods in width where it now is.   Also the
right at their own cost to remove said street farther south and to make it three
rods in width." W. Street was never laid out across the railroad location or
westerly of the location to the river as a public way, but was laid out by the city
authorities for a portion of the distance in 1854, and the balance of the distance in
1867, to the easterly side of the railroad location.   There were no signs of any
kind at the entrance of the way over the location.   The houses westerly of the
railroad were few in number.   There was some travel across the railroad location
to and from boats and boat-houses on the river bank as far back as 1852 or 1853,
and also travel for ten or twelve years prior to 1893 to a public dump on the
river.   *Held*, in an action for personal injuries sustained in 1893 at the crossing
of W. Street by the railroad, that there was some evidence for the jury that the
street had then become a public way by prescription.

If the issue in an action is whether a street had become a public way by prescrip-
tion, an ancient deed of land in which the street is mentioned and a plan re-
ferred to in the deed are admissible in evidence, in the discretion of the judge,
to show the origin and history of the way ; and an exception, which does not
appear distinctly to have been alleged to the instruction of the judge upon the
effect of the deed and plan taken by themselves, will not be sustained.

FIELD, C. J.   These are actions of tort under Pub. Sts. c. 112,
§ 213.   The exceptions relate to the questions whether there
was evidence for the jury that Wilcox Street, in Springfield, at
the point where it crossed the railroad track at grade, was at the
time of the accident, in 1893, a public way by prescription, and
whether certain evidence offered by the plaintiff and admitted
by the court was competent.   We think that there was some
evidence for the jury that at the time of the accident the street
had become a highway by prescription.   The principles which

govern this part of the case have been declared in several recent cases. *Fitchburg Railroad* v. *Page*, 131 Mass. 391. *Weld* v. *Brooks*, 152 Mass. 297. *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57. *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330.

In the Sprow case, the entrance to the way was through an opening in a fence less than fourteen feet wide, and there were three signs at the entrance, one of which had on it "Dangerous Passing. This is a private way," and another had on it, "Not a public way. Dangerous"; and the way had its origin in a reservation of a private way in a deed from one Jennison to the defendant in the case, and the way was used largely in going to and from houses built upon the land as appurtenant to which the right of way had been reserved. In the present case the railroad location of the Hartford and Springfield Railroad Company, the predecessor in title of the defendant, was filed on March 15, 1845, and Wilcox Street across the location appears on it. The right to construct the railroad over the land was also conveyed by Philo F. Wilcox and another to that company by deed dated July 8, 1845, and the deed contained the following: "Reserving, however, the right to the use of Wilcox Street as a street two rods in width where it now is. Also the right at their own cost to remove said street farther south and to make it three rods in width." The street was never laid out across the railroad location or westerly of the location to the river as a public way. Wilcox Street was laid out by the city authorities of Springfield on October 23, 1854, westerly from Main Street to Water Street, forty-nine and one half feet wide, and on November 25, 1867, from the westerly side of Water Street to the easterly side of the railroad location, thirty-three feet wide. It does not appear that the way in fact across the location was not of the width of thirty-three feet, the same as the public street just easterly. There were no signs of any kind at the entrance of the way over the location. There was not much occasion for travel from the easterly side of the location to houses westerly of the railroad, as they were few in number, and we do not know that these houses stood upon land which once belonged to Philo F. Wilcox or to the "Wilcox heirs." There was some evidence of travel across the railroad

location to and from boats and boat-houses on the river bank as far back as the year 1852 or 1853, and of travel for the last ten or twelve years to a public dump on the river. These are some of the differences between the two cases.

The more difficult question is whether the deed marked C and the plan marked D were properly admitted in evidence. The deed marked C is a deed from Philo F. Wilcox to Philip Wilcox, dated January 27, 1838. It purports to convey the grantor's right, being one undivided half, in certain lots of land in Springfield, " being lots No. 28, 29, 30, 31, 32, on a plan of lots drawn by George Colton for said Wilcoxes, which plan is recorded in the Registry of Deeds, Lib. 89, page 643," etc. The lots are bounded " southerly on Wilcox Street." The plan D is the plan referred to in the deed, and shows the lots bounded southerly on a street which is designated on the plan as " New Street, 3 rods wide," but which just westerly of lot No 32 on the plan is narrowed to two rods, and as a way two rods wide is continued to Connecticut River. The plan is dated May 1, 1837. The deed at the time of the trial was an ancient deed, and it is contended by the defendant that it was admitted in connection with the plan to show not only the origin and location of Wilcox Street, but also its character as a way at the date of the deed, and as some evidence that at that time Wilcox Street was a public way, or was used as a public way.

The lots conveyed by the deed were easterly of Water Street, but the plan and deed together, if admissible, would naturally have some tendency with the jury to show that a way was intended two rods wide westerly of lot No. 32 to the river, and that this whole way, at the date of the execution of the deed, was called by the grantor Wilcox Street. We doubt whether the deed and the plan of themselves have any tendency to prove that Wilcox Street was a public way, or was used by the public adversely under a claim of right at that time. The plan purports to be as follows: " Plan of Messrs. Phillip & Philo F. Wilcox Building Lots, the roads and width of the lots laid on a scale of four rods to an inch, the length of the lots on a scale of one and one half rods to an inch. May 1, 1837. Geo. Colton, Surveyor."

Main Street appears on the plan, and the lots are all westerly

of Main Street. The only other street on the plan is the one called New Street. It may perhaps be said to be as reasonable an inference from the plan and deed that New Street, which in the deed is called Wilcox Street, was a street laid out by the owner of the land for the use of purchasers of the building lots, as that it was a public street or way, and it is well known that streets laid out by owners of land for the benefit of purchasers of lots often appear on plans and are referred to in deeds when they have not been wrought for travel or used by travellers in any manner. The presiding justice might, however, properly enough, in his discretion, admit in evidence this plan and deed, for the purpose of showing the origin of Wilcox Street and its history ; and there was other evidence in the case from which it might be inferred that the way in actual use was in the same location as that laid down on the plan and referred to in the deed.

The contention of the plaintiffs at the trial was that Wilcox Street had become at the time of the accident a public way by prescription. There was no contention that Wilcox Street across the railroad had ever been laid out as a public street, or had at any time become a public street by dedication. If the court admitted the deed C and the accompanying plan as some evidence that Wilcox Street was a public highway at the date of the deed, this, if erroneous, became immaterial because the whole case shows that it was taken for granted that it was not a public way at that time. It is contended that the court also in effect instructed the jury that the deed and plan were some evidence that Wilcox Street in 1838 was used by the public adversely under a claim of right. The presiding justice instructed the jury that the whole evidence was " not sufficient, legally, to enable you to find that it had become established by twenty years of adverse use prior to the location [of the railroad] in 1845; therefore, it follows that to establish it the plaintiffs must satisfy you that there has been twenty years of open, adverse, uninterrupted, continuous use, under a claim of right, subsequent to the filing of the plan, subsequent to March, 1845." By plan here is meant the plan of the railroad location. If the presiding justice had stopped at this point in his instructions, a ruling on the effect of the deed C

and the plan D as tending to show a public use of Wilcox Street in the year 1838, if erroneous, we think, would have done no substantial harm to the defendant.  The justice, however, went on to say, in effect, that in passing upon the question whether there had been twenty years of adverse use after March, 1845, the jury had a right to consider the condition of things prior to that time ; that is, as he expressed it, " the condition of things prior to that time may have a bearing in your minds upon the question whether any use that was made of the road, after 1845, was under a claim of right, was adverse, and so on."  In a general sense this is true, although the condition of things prior to that time had perhaps a tendency to show that the way was originally laid out by the owner of the land for the benefit of purchasers of lots into which the land had been divided by the owner.  When the way was wrought for travel, and when it began to be used, and in what manner, with what intent, and by whom it was used, as well as when the lots were built upon, if they were built upon, did not appear from the deed and plan.  The whole charge perhaps means that the deed C and the plan D, in connection with the other evidence, was some evidence to be considered by the jury that in 1838, and thereafter up to 1845, Wilcox Street had been used by the public adversely under a claim of right; and that to establish Wilcox Street as a public way the jury must find that for twenty years after the location in 1845 the street had been used by the public adversely under a claim of right, but as bearing upon the question whether the use by the public after 1845 was adverse or not, the jury had the right to consider the character of the use before that time.

It may be that the charge also means that the deed and the plan of themselves have some tendency to show an adverse use by the public before that time.  Taking the whole evidence of the origin and existence of the way before the year 1845, we cannot say that it was incompetent upon the issue actually tried.  The deed C and the plan D being admissible at least, in the discretion of the court, for the purpose of showing the origin and history of the way, if the defendant objected to any ruling or instruction as to the effect of the deed and plan, taken by themselves, we think that he should have called the attention

of the court distinctly to the subject, and have taken an exception to any such ruling or instruction.   The exceptions of the defendant are to the admission of the deed and plan for the consideration of the jury; and to the refusal of the court to rule that there was no sufficient evidence in the case for the jury to find that at the time of the accident a public way had been established by prescription; and to the instructions of the court not in harmony with the requests of the defendant.   The instruction of the court upon the effect of the deed and plan, taken by themselves, if they were admissible in evidence, does not appear to have been distinctly excepted to, and it is not certain from the exceptions that the court meant to give any instruction upon the effect of the deed and plan considered apart from all the other evidence.

*Exceptions overruled.*

*G. D. Robinson,* (*W. S. Robinson* with him,) for the defendant.
*W. H. McClintock,* (*J. B. Carroll* with him,) for the plaintiffs.